Frank J. Franzino, Jr.
Meier Franzino & Scher, LLP
Attorneys for Defendants
Joseph DiMauro, Eastern Energy
Fuels, Inc. and Clark Dodge and
Company, Inc.
570 Lexington Avenue, 26th Floor
New York, New York 10022
(212) 759-9770

And

Winne Banta Hetherington Basralian & Kahn, P.C.
Court Plaza South – East Wing
21 Main Street, Suite 101
P.O. Box 647
Hackensack, New Jersey 07601-0647
(203) 487-3800

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------x

MASEFIELD INTERNATIONAL, INC.,

              Plaintiff,

-against-

TERMINAL VENTURES, INC., JOSEPH
DIMAURO, EASTERN ENERGY
FUELS, INC., and CLARK DODGE AND
COMPANY, INC.

              Defendants

---

TERMINAL VENTURES, INC.

              Third-Party Plaintiff,

-against-

MASEFIELD AG, ARAL WIND LTD.,
M/T ARAL WIND, its engines, tackle,
apparel, etc., LIBERTY MUTUAL
INSURANCE COMPANY, and JOHN
DOE

              Third Party Defendants.

---------------------------------------------------------------x

*Oral Argument Requested*

Index No. 08-3850 (JLL) (CCC)

*Document Electronically Filed*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOSEPH DIMAURO,
EASTERN ENERGY FUELS, INC. and CLARK DODGE AND COMPANY, INC.'S
NOTICE OF MOTION TO DISMISS**

*Motion Returnable January 18, 2011*

## TABLE OF CONTENTS

Page

Table of Authorities..............................................................................ii

Introduction.......................................................................................1

POINT I.   The New Pleadings Lack Merit.................................................2

POINT II.  The Amended Complaint Fails As to Newly Added Parties...............8

POINT III. Claims Based Upon Loans Should Be Dismissed..........................11

Conclusion.......................................................................................12

TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ................................................................. 2, 7, 8, 10, 11

Chen v. HD Dimension, Corp.,
    2010 WL 4721514 (D.N.J. 2010) ................................................................. 4

DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,
    540 F.2d 681 (4th Cir. 1976) ................................................................. 3, 4

Green v. Mason,
    996 F.Supp. 394 (D.N.J. 1998) ................................................................. 5

Horizon Plastics, Inc. v. Constance,
    2004 WL 1234049 (S.D.N.Y. 2004) ................................................................. 12

In re HSR Associates,
    162 B.R. 680 (Bkrtcy. D.N.J. 1994) ................................................................. 5

Intelnet Intern. Corp. v. ITT Corp.,
    2006 WL 2192030 (N.J. Super. A.D. 2006) ................................................................. 10, 11

Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc.,
    884 F.Supp. 162 (D.N.J. 1995) ................................................................. 5

Kaplan v. First Options of Chicago, Inc.,
    19 F.3d 1503 (3rd Cir. 1994) ................................................................. 6

Kugler v. Koscot Interplanetary, Inc.,
    120 N.J. Super. 216, 293 A.2d 682 (Chancery Div. 1972) ................................................................. 3

Lum v. Bank of America,
    361 F.3d 217 (3rd Cir. 2004) ................................................................. 2

Lyon v. Barrett,
    89 N.J. 294, 445 A.2d 1153 (Sup. Ct. N.J. 1982) ................................................................. 4

Premier Pork L.L.C. v. Westin, Inc.,
    2008 WL 724352 (D.N.J. 2008) ................................................................. 2

Richard A. Pulaski Construction Co., Inc. v. Ritterson,

    195 N.J. 457, 950 A.2d 868 (Sup. Ct. N.J. 2008) ................................................. 2, 3

State Capital Title & Abstract Co. v. Pappas Business Services, LLC
    646 F.Supp.2d 668 (D.N.J. 2009).............…....……………………………..4

Verni ex rel. Burstein v. Harry M. Stevens, Inc.
    387 N.J. Super. 160, 903 A.2d 475 (App. Div. 2006)……………………….....4, 5

Yacker v. Weiner,
    109 N.J. Super. 351, 263 A.2d 188 (Chancery Div. 1970) aff'd o.b. 114 N.J.
        Super 526, 277 A.2d 417 (App. Div. 1971)................................................ 3

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

This Memorandum of Law is respectfully submitted on behalf of Joseph DiMauro, Eastern Energy Fuels, Inc., and Clark Dodge Company, Inc. ("DiMauro defendants"). Relevant documents are annexed as Exhibits to the Affirmation of Frank Franzino.

## INTRODUCTION

The original complaint in this action was filed in 2008. This complaint included, *inter alia,* claims for breach of contract, breach of warranty and rescission against defendant Terminal Ventures, Inc. ("TVI"). TVI answered the complaint and filed counterclaims sounding in breach of contract and tort against plaintiff. TVI also served and filed a third party complaint against Masefield AG, Aral Wind Ltd., M/T Aral Wind, its engines tackle, apparel, etc. and Liberty Mutual Insurance Company. The underlying transaction precipitating the original lawsuit was a contract involving the storage of fuel at a terminal owned by TVI in Jersey City, New Jersey. Plaintiff's claims concern an alleged failure to repair one of the docks located at TVI's terminal. TVI contends that one of plaintiff's vessels caused extensive damage to that dock rendering it unusable.

Pursuant to an order of Magistrate Cecchi dated November 3, 2010, plaintiff was permitted to amend its complaint to include claims sounding in fraudulent transfer and conversion against the DiMauro defendants and TVI.[1] See Exhibit A to the Franzino Declaration. The First Amended Complaint was served and filed after this Court had just denied plaintiff's application for a writ of attachment and for an injunction. Since all of these newly added claims are legally deficient, the DiMauro defendants move pursuant to Fed. Rule Civ. Pro. 12(b)(6) to dismiss the new claims in the First Amended Complaint.

---

[1] The DiMauro defendants deny the allegations contained in the First Amended Complaint as it relates to them and do not concede that the facts as alleged in the First Amended Complaint are accurate.

1

## POINT I
## THE NEW PLEADING LACKS MERIT

Pursuant to <u>Ashcroft v. Igbal</u>, 129 S. Ct. 1937, 1948-49 (2009), a court reviewing a motion to dismiss has an obligation to accept factual allegations as true but "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions…only a complaint that states a plausible claim for relief survives a motion to dismiss". .. a court need not accept 'unsupported conclusions and unwarranted inferences' (citations omitted) and legal conclusions made in the guise of factual allegations… are given no presumption of truthfulness". (citations omitted). <u>Premier Pork L.L.C. v. Westin, Inc.</u>, 2008 WL 724352, p. 3 (D.N.J. 2008)

In determining a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of a claim. See <u>Lum v. Bank of America</u>, 361 F.3d 217, 222, FN 3 (3rd Cir. 2004).

The First Amended Complaint is based upon the premise that Mr. DiMauro is the alter ego of TVI and also the alter ego all of the DiMauro defendants. Plaintiff then seeks to pierce the corporate veil to hold Mr. DiMauro and the DiMauro defendants responsible for a potential judgment obtained in this action against TVI. Plaintiff alleges that Mr. DiMauro received payments from TVI prior to and while this lawsuit was pending and that TVI is insolvent as a result of Mr. DiMauro's siphoning of funds from it. Plaintiff further claims that TVI will be unable to pay whatever judgment amount it will receive in this action.

This basic premise is flawed. Plaintiff is mistaken as to the application of the theory of piercing the corporate veil to the case at bar. First, such a remedy is provided in limited circumstances and only where primary liability has been assigned. Thus, the application of such a remedy is premature herein at best. See <u>Richard A. Pulaski Construction Co, Inc. v. Ritterson,</u>

195 N.J. 457, 467, 950 A.2d 868 (Sup. Ct. N.J. 2008) (holding as follows: "At the outset, we define the boundaries of the issue presented. Because plaintiff had both a contract cause of action and an action to confirm its arbitration award against Air Frame, there is not a case where plaintiff is without a cause of action. Due to Air Frame's judgment-proof status, however, this is a case where plaintiff is seemingly without an effective remedy. It is for that reason that plaintiff belatedly sought to recover against defendant, first alleging fraud and then making a claim for prima facie tort").

Here, Plaintiff has to initially prove that TVI is liable to it. If plaintiff is successful in such an endeavor at trial, plaintiff would have to seek to collect any judgment against TVI. Should such collection efforts fail as against TVI, plaintiff would then have the opportunity to move by way of a turnover proceeding against the DiMauro defendants. Thus, it is premature at best to include the DiMauro defendants whose liability is secondary prior to any judgment.

Second, this case is not an appropriate one for piercing the corporate veil. Courts begin an inquiry concerning "piercing the corporate veil" with the assumption that a corporation is an entity separate and apart from its shareholders and directors. See Yacker v. Weiner, 109 N.J. Super. 351, 263 A.2d 188 (Chancery Div. 1970), aff'd o.b. 114 N.J. Super. 526, 277 A.2d 417 (App. Div. 1971). The corporate entity is not lightly disregarded. See Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 293 A.2d 682 (Chancery Div. 1972); see also DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976) (holding that "This power to pierce the corporate veil, though, is to be exercised 'reluctantly' and 'cautiously' and the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim").

3

In <u>Lyon v. Barrett</u>, 89 N.J. 294, 300, 445 A.2d 1153 (Sup. Ct. N.J. 1982), the Supreme Court stated that "corporation is an entity separate from its stockholders" and that "courts will generally not pierce the corporate veil to impose liability on the entity's principals".

"In addition, piercing the corporate veil is not a mechanism by which legal liability is imposed per se, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form. (citation omitted). Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil. (citation omitted)." <u>Chen v. HD Dimension, Corp.</u>, 2010 WL 4721514, p. 4 (D.N.J. 2010).

A party seeking to disregard the corporate entity bears the burden of proof. <u>DeWitt</u> at 683. Courts have reviewed a series of factors where piercing the corporate veil is requested. "In New Jersey, two elements must be shown to pierce the corporate veil. First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." (citation omitted). <u>State Capital Title & Abstract Co. v. Pappas Business Services, LLC</u>, 646 F.Supp.2d 668, 679 (D.N.J.2009).

Primary then among the factors considered in sustaining a claim sounding in piercing the corporate veil is the misuse of the corporate form to specifically to perpetuate fraud or injustice. See <u>Verni ex rel. Burstein v. Harry M. Stevens, Inc.</u> 387 N.J. Super. 160, 198, 903 A.2d 475 (App. Div. 2006) (holding that "In the absence of fraud or injustice, courts will generally not pierce the corporate veil to impost liability on the corporate principals").

The requirement that the corporation is manipulated for the benefit of its insiders must result in a fraud or injustice perpetuated against a creditor. See Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc., 884 F.Supp. 162, 166 (D.N.J. 1995) (holding that "As noted above, defendants have simply alleged domination. Because defendants have not included even conclusory allegations as to fraud, injustice or any sort of illegality, defendants' claims could not survive scrutiny under either Rule 9(b) or 8(a)(2)").

In Green v. Mason, 996 F. Supp. 394, 398 (D.N.J. 1998), this Court held that "a finding of some fraudulent intent is the sine qua non to veil piercing" (citations omitted). In re HSR Associates, 162 B.R. 680, 684 (Bkrtcy. D.N.J. 1994), the Bankruptcy Court held that "The mere fact that Fuerstner was the principal of a corporation which acted improperly is not in itself sufficient to hold him personally liable for the corporation's actions").

In the case at bar, the allegations in the First Amended Complaint do not come close to the type of allegations necessary to pierce the corporate veil – to wit, the fact that Mr. DiMauro received funds from TVI or that any of the DiMauro defendants received funds from TVI do not demonstrate either the type of fraud or injustice described in Green and In re HSR Associates necessary to pierce the corporate veil.

Further, the requirement of either fraud or illegality has not been met herein where plaintiff is aware that TVI has sufficient assets to pay any potential judgment obtained by plaintiff against it. See Exhibit E to Franzino Declaration.

To pierce the corporate veil, a party must demonstrate that a corporation is "grossly undercapitalized, shareholders or directors are involved in the day to day activities of the corporation, the corporation fails to observe corporate formalities, the corporation fails to pay dividends, is insolvent, lacks corporate records or is merely a façade" Verni at 200.

"Not every disregard of the corporate formalities or failure to maintain corporate records justifies piercing the corporate veil. That remedy is available only if it is also shown that a corporation's affairs and personnel were manipulated to such an extent that it became nothing more than a sham used to disguise the alter ego's use of its assets for his own benefits in fraud of creditors. In short, the evidence must show that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes". Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3rd Cir. 1994).

Plaintiff's allegations do not present the type of allegations necessary to pierce the corporate veil as described in the cases above nor do plaintiff's allegations amount to any more than legal conclusions. It is clear from plaintiff's own pleading that Mr. DiMauro lent significant funds to TVI and was repaid certain of these funds. There are no allegations presented that Mr. DiMauro or any of the DiMauro defendants were involved in the daily operational activities of TVI.

Plaintiff fills the amended complaint with allegations that Mr. DiMauro is the alter ego of TVI and that Mr. DiMauro has siphoned funds from TVI. These type of allegations, however, miss the mark herein. During the course of this litigation, plaintiff has received evidence that TVI is not insolvent and that it possesses sufficient assets to pay any potential judgment obtained by plaintiff against it. The appraisal report prepared by New Jersey in connection with the condemnation of a portion of TVI's property demonstrates that TVI retains property worth approximately $3 million. See Franzino Declaration at Exhibit E. Since plaintiff is fully cognizant of the fact that TVI still owns part of the property on which the terminal sits, the question of piercing the corporate veil has no place in this litigation at this time especially where plaintiff premises the First Amended Complaint upon the false allegation that TVI is insolvent.

The new claims in the First Amended Complaint are based upon N.J.S. 25;2-25 which provides as follows:

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay or defraud any creditor of the debtor;

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due."

Under Iqbal, plaintiff has an obligation to set forth sufficient factual allegations to demonstrate that a claim for fraudulent transfer may exist herein. Plaintiff's First Amended Complaint is, however, sorely deficient in this regard. All of the allegations in the First Amended Complaint regarding supposed transfers to either Mr. DiMauro or the DiMauro defendants do not consider the crucial point that TVI still has sufficient assets to pay any judgment in this case should plaintiff be successful.

As to the DiMauro defendants aside from Mr. DiMauro, plaintiff's allegations are simply that these entities received certain funds from TVI. See Footnote 1. What these allegations do not take into consideration is the fact that plaintiff is fully cognizant of the fact that certain of

these entities lent money to TVI. Such evidence has been in plaintiff's possession in connection with motion practice on this case. The fact that the newly added defendants may have received money from TVI while this lawsuit was pending does not represent allegations sufficient to meet the Iqbal standards. The motion to dismiss the First Amended Complaint as to Mr. DiMauro and the DiMauro defendants should be granted.

## POINT II

### THE AMENDED COMPLAINT FAILS AS TO NEWLY ADDED PARTIES

On or about October 28, 2010, plaintiff made an application before this Court for the extraordinary relief of a writ of attachment and an injunction. Plaintiff's stated purpose for this application was to prevent TVI from dissipating its assets prior to the conclusion of this action. In its brief in support of this request, plaintiff stated as follows: "Plaintiff recently discovered that the New Jersey Department of Transportation ("NJDOT") is acquiring the property upon which the TVI terminal facility is situated, through its power of eminent domain. Therefore, substantial funds are about to come into possession of TVI as a result of the sale. In order to avoid the fraudulent dissipation of the sale proceeds, plaintiff seeks this order of attachment of TVI's assets up to the present value of plaintiff's claim and a temporary restraining order preventing TVI from realizing and transferring the proceeds of the imminent sale of the facility until an attachment of those funds can be effected and/or a post-seizure hearing on this Order To Show Cause can be scheduled." Brief for plaintiff annexed as Exhibit B to Franzino Declaration at page 1-2. Plaintiff further stated: "In light of TVI's history of fraudulent transfers, as well as its inability to pay its creditors, Masefield believes that upon its receipt of the settlement proceeds, TVI will immediately transfer the funds to Mr.DiMauro or one of his entities and/or another third party in an attempt to defraud its creditors, including Masefield". Id at 11.

8

In opposition to this application, TVI stated as follows: "Plaintiff points to not a single instance where massive amounts of funds have been 'immediately transferred' whether for good reason or for ill. Nor has it shown any prior adjudication of fraud or other evidence of any kind to indicate such a course of conduct...." TVI's brief in opposition to application for writ of attachment annexed to Franzino Declaration as Exhibit C at page 12. "The Komsa Declaration implies that the NJDOT is purchasing the entire facility. (citations omitted). This is not so. It is purchasing only a part of the facility under its condemnation power". Id at page 6.

In a decision and order dated December 3, 2010, this Court denied plaintiff the extraordinary relief it had sought. This Court found that "Additionally, plaintiff contends that after the real estate transfer to the NJDOT, TVI will no longer have any property within the State of New Jersey. This, however, does not appear to be the case as the Court is satisfied with defense counsel's representation that defendant continues to own valuable real property in the State of New Jersey". Decision and Order annexed to Franzino Affirmation as Exhibit D at page 8.

This Court found that "On October 29, 2010, defendant finalized the sale of the terminal facility for approximately $18 million. Defendant still owns a three (3) acre parcel in Jersey City that contains, inter alia, storage tanks, and its office building. During the sale of the property, this three (3) acre parcel was appraised at $3 million." Decision and Order annexed to Franzino Affirmation as Exhibit D at page 3.

This Court further held that "The plaintiff's bald assertion is that TVI has shown particular expertise in hiding assets, or as plaintiff claimed, making false statements. The bald assertions are not sufficient to convince this Court that in fact will occur in the context of this case as the litigation goes forward, especially in light of the fact that the defendant has

9

represented to this Court that it possesses sufficient assets apart from the proceeds of the sale to NJDOT, which are in question here, to compensate plaintiff in the event it is successful in obtaining a judgment against the defendant". Id at 11.

The Fifth Cause of Action in the First Amended Complaint seeks the same relief, to wit, an order of attachment and an injunction, which this Court has already denied finding the application to be legally insufficient. Thus, the Fifth Cause of Action is based upon the same premise already been reviewed and determined by this Court to be lacking. Specifically, plaintiff bases these claims upon the assertion that TVI is currently insolvent and will be, therefore, unable to satisfy any potential judgment plaintiff may obtain. As noted above, this Court has determined in reviewing the same facts submitted by plaintiff in support of the application for a writ of attachment and injunction that TVI is not selling all of its assets to NJDOT and will retain sufficient resources to potentially pay plaintiff in the unlikely event that plaintiff prevails in this action.

Moreover, this Court has already the same type of allegations and legal conclusions against Mr. DiMauro and the DiMauro defendants in the application for a writ of attachment and injunction as are presented in the First Amended Complaint, in the additional causes of action sounding in breach of contract, breach of warranty and conversion. These allegations were not sufficient for the writ of attachment or the injunction; these same allegations are not sufficient to sustain the claims made under the Iqbal standards.

In Intelnet Intern. Corp. v. ITT Corp., 2006 WL 2192030, p. 12 (N.J. Super. A.D. 2006), the Court declined to pierce the corporate veil despite the fact that plaintiff had claimed that the subsidiary was judgment proof. "Nor was piercing the corporate veil justified because ITT Intelnet was effectively judgment proof and, plaintiff asserts, undercapitalized. (citations

10

omitted). However, that result is not required where, as here, a subsidiary is created with as much capital as currently needed, with the purpose of limited potential losses and that is known to the other contracting party".

Here, as in Intelnet, there is no need to add claims sounding in fraudulent transfer or based on alter ego where the primary defendant, TVI, has sufficient resources to pay plaintiff should plaintiff obtain a judgment.

By adding Mr. DiMauro and the DiMauro defendants, plaintiff is seeking to re-litigate this same issue – whether TVI has assets. This issue has already been decided against plaintiff. As Iqbal demonstrates, claims which are based upon mere legal conclusions are not meritorious. Since the entire thrust of the fraudulent transfer claims and claims based on alter ego are based upon the faulty premise that TVI is insolvent, these claims should be dismissed.

## POINT III

## CLAIMS BASED UPON LOANS SHOULD BE DISMISSED

Plaintiff's new claims in the First Amended Complaint allege that Mr. DiMauro received funds improperly from TVI. Plaintiff alleges as follows: "Specifically, this document made clear that even after learning of Masefield's claim, TVI continued transferring its assets to Mr. Joseph DiMauro, EEF, and Clark Dodge, without valuable consideration and/or without adequate and fair consideration… The general ledger indicates that from November 2007 until June 30, 2009, TVI transferred at least $1,302,394.20 to Mr. Joseph DiMauro and/or his various shell entities including defendants Eastern Energy Fuels and Clark Dodge…" First Amended Complaint annexed to Franzino Affirmation as Exhibit A at paragraphs 59 and 60.

As noted above, this Court has already determined as follows: …"defendant has provided the Court with proofs that suggest that said transfers were repayments for loan DiMauro

11

allegedly made to TVI"... As to plaintiff's contention that TVI received no consideration for its $1.3 million transfer to Mr. DiMauro, as the Court previously stated defendant has provided proofs at this stage of the litigation sufficient to suggest that the alleged $1.3 million in transfers to Mr. DiMauro or his related companies may have been in fact repayments towards loans made by Mr.DiMauro". Decision and Order at page 8.

In Horizon Plastics, Inc. v. Constance, 2004 WL 1234049, p. 3 (S.D.N.Y. 2004), a case decided under New Jersey's law on fraudulent conveyances, the District Court held as follows: "..the fact that a stockholder may have lent money to a corporate property owner to pay its debts to a subcontractor does not provide a basis for piercing the corporate veil."

Here, as in Horizon, the thrust of plaintiff's claims against Mr.DiMauro and the DiMauro defendants rests upon the insufficient allegations that these defendants received funds from TVI. As this Court has already noted, such funds were repayments of loans.

The case at bar involves a more egregious attempt by plaintiff to bring additional corporations and Mr. DiMauro into this action which concerns a contract by and between TVI and plaintiff. None of the newly added defendants were parties to that contract; at most these newly added defendants received certain funds from TVI. As noted in this Court's own decision, the alleged transfers which form, in part, the basis of the First Amended Complaint, were repayment of loans. The bare assertions that the newly added defendants received transfers of funds from TVI are legally insufficient to sustain a claim for piercing the corporate veil.

## CONCLUSION

For all of the reasons heretofore stated, the Motion to Dismiss should be granted in its entirety.

Respectfully submitted.

12

Dated: New York, New York
December 20, 2010

                                      MEIER FRANZINO & SCHER, LLP

By:    Frank J. Franzino, Jr. (FF-9740)
Attorneys for Defendants Joseph DiMauro,
Eastern Energy Fuels, Inc., and Clark
Dodge and Company, Inc.
570 Lexington Avenue, 26th Floor
New York, NY 10022
212-759-9770
        And

Winne Banta Hetherington Basralian &
Kahn, P.C.
Court Plaza South – East Wing
21 Main Street, Suite 101
P.O. Box 647
Hackensack, New Jersey 07601-0647
203-487-3800

13