Frank J. Franzino, Jr.
Meier Franzino & Scher, LLP
Attorneys for Defendants
Joseph DiMauro, Eastern Energy
Fuels, Inc. and Clark Dodge and
Company, Inc.
570 Lexington Avenue, 26th Floor
New York, New York 10022
(212) 759-9770

And
Winne Banta Hetherington Basralian & Kahn, P.C.
Court Plaza South – East Wing
21 Main Street, Suite 101
P.O. Box 647
Hackensack, New Jersey 07601-0647
(203) 487-3800

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------------x

**MASEFIELD INTERNATIONAL, INC.,**

          **Plaintiff,**

       **-against-**

**TERMINAL VENTURES, INC., JOSEPH
DIMAURO, EASTERN ENERGY
FUELS, INC., and CLARK DODGE AND
COMPANY, INC.**

         **Defendants**

**TERMINAL VENTURES, INC.**

       **Third-Party Plaintiff,**

       **-against-**

**MASEFIELD AG, ARAL WIND LTD.,
M/T ARAL WIND, its engines, tackle,
apparel, etc., LIBERTY MUTUAL
INSURANCE COMPANY, and JOHN
DOE**

       **Third Party Defendants.**

------------------------------------------------------------x

*Oral Argument Requested*

**Index No. 08-3850 (JLL) (CCC)**

*Document Electronically Filed*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOSEPH DIMAURO, EASTERN ENERGY FUELS, INC. and CLARK DODGE AND COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT

                  *Motion Returnable August 15, 2011*

## TABLE OF CONTENTS

- **TABLE OF AUTHORITIES**.................................................................ii

- **INTRODUCTION**.........................................................................1

- **ARGUMENT:**

    **POINT I:**    **THE ALTER EGO CLAIMS FAIL AS A MATTER OF LAW:**

    A. **Mr. DiMauro Is Not Synonymous With TVI;
    TVI Has A Separate Identity From Mr. DiMauro**...................................4

    B. **Plaintiff Is Unable To Prove Any Fraud Or Injustice Against It**....................6

    **POINT II:**   **THE FRAUDULENT TRANSFER CLAIM FAILS**....................10

    **POINT III:**   **THE CLAIM FOR FRAUDULENT TRANSFER IS
    INCONSISTENT WITH UNDISPUTED FACTS**.......................13

    **POINT IV:**   **CLAIMS BASED UPON LOANS SHOULD BE DISMISSED**........16

- **CONCLUSION**...........................................................................17

i

# TABLE OF AUTHORITIES

*Case*                                                                    *Page No*

Chen v. HD Dimension, Corp., 2010 WL 4721514 (D.N.J. 2010)………………………………..6

DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681 (4th Cir. 1976)……5, 6

Green v. Mason, 996 F. Supp. 394 (D.N.J. 1998)…………………………………………...7

Horizon Plastics, Inc. v. Constance, 2004 WL 1234049 (S.D.N.Y. 2004)…………………..5, 17

In re Hanson, 373 B.R. 522 (Bkrtcy. N.D. Ohio, 2007)……………………………………13

In re HSR Associates, 162 B.R. 680, 684 (Bankr. D.N.J. 1994)…………………………………7

In re OFRA Sec. Litigation, 654 F.Supp 1449 (D.N.J. 1987)…………………………………...12

Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc., 884 F.Supp. 162 (D.N.J. 1995)……………..7

Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503 (3rd Cir. 1994)………………………..9

Lyon v. Barrett, 89 N.J. 294, 445 A.2d 1153 (Sup. Ct. N.J. 1982)………………………………..6

Mitsui O.S.K. Lines v. Continental Shipping Line, Inc., 2007 WL 1959250 (D.N.J. 2007)……12

North American Steel Connection, Inc. v. Watson Metal Products Corp.,
2010 WL 3724518 (D.N.J 2010)……………………………………………………………..9

Pearson v. Component Technology Corp., 247 F.3d 471 (3rd Cir. 2001)…………………………5

Rabin v. Mony Life Ins. Co., 387 Fed.Appx. 36 (2nd Cir. 2010)……………………………….8

Rose Containerline, Inc. v. Omega Shipping Co., Inc., 2011 WL 1253849 (D.N.J. 2011)………..4

State Capital Title & Abstract Co. v. Pappas Business Services, LLC,
646 F.Supp.2d 668 (D.N.J.2009)……………………………………………………………..6

Telefest v. Vu-TV, Inc., 591 F.Supp. 1368 (D.N.J. 1984)………………………………...12, 13

Verni ex rel. Burstein v. Harry M. Stevens, Inc.
387 N.J. Super. 160, 903 A.2d 475 (App. Div. 2006)……………………………………..6, 8

<u>VFB, LLC v. Campbell Soup Co.</u>, 482 F.3d 624 (3rd Cir. 2007).......................................12

<u>Yacker v. Weiner,</u> 109 N.J.Super. 351, 263 A.2d 188 (N.J.Super.Ch. 1970),
aff'd o.b. 114 N.J.Super. 526, 277 A.2d 417 (App. Div. 1971)...........................................5

<u>Zubik v. Zubik,</u> 384 F.2d 267 (3rd Cir. 1967)..................................................................9, 10

*Statute*

N.J.S. 25: 2-25 (L.2011)..................................................................................................11

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This Memorandum of Law is submitted on behalf of defendants Joseph DiMauro, Eastern Energy Fuels, Inc., and Clark Dodge Company, Inc. ("DiMauro defendants") in support of their motion for summary judgment dismissing the alter ego claims against Mr. DiMauro and the fraudulent transfer claims against all of the DiMauro defendants. The facts are as stated in the Statement of Undisputed Facts and will be repeated herein only as necessary.

### INTRODUCTION

The original complaint in this action was filed in 2008.  This complaint included, *inter alia,* claims for breach of contract, breach of warranty and rescission against defendant Terminal Ventures, Inc. ("TVI").  TVI answered the complaint and filed counterclaims sounding in breach of contract and tort against plaintiff.  TVI also served and filed a third party complaint against Masefield AG, Aral Wind Ltd., M/T Aral Wind, its engines tackle, apparel, etc. and Liberty Mutual Insurance Company.  The underlying transaction precipitating the original lawsuit was a contract involving the storage of fuel at a terminal owned by TVI in Jersey City, New Jersey.  Plaintiff's claims concern an alleged failure to repair one of the docks located at TVI's terminal.  TVI contends that one of plaintiff's vessels caused extensive damage to that dock rendering it unusable.

Pursuant to an order of Magistrate Cecchi dated November 3, 2010, plaintiff was permitted to amend its complaint to include claims sounding in fraudulent transfer and conversion against the DiMauro defendants and TVI.   The First Amended Complaint was served and filed just after this Court had denied plaintiff's application for a writ of attachment and for an injunction.

1

The DiMauro defendants then made a motion to dismiss the First Amended Complaint which was granted in part by this Court in March 2011. This Court dismissed the alter ego claims against Mr. DiMauro finding that plaintiff had failed to cite to any binding authority that a "de facto owner" could be held liable on an alter ego theory. Plaintiff was given leave to amend the complaint. Eastern Energy Fuels, Inc. ("Eastern") and Clark Dodge & Co, Inc. ("Clark Dodge") then answered the Second Amended Complaint denying the allegations as to fraudulent transfer against them.

In the Second Amended Complaint, plaintiff changed the pleading allegations to state that Mr. DiMauro was the "actual, beneficial and equitable owner" of TVI. Mr. DiMauro then moved to dismiss the Second Amended Complaint on the basis that plaintiff had failed again to provide this Court with binding authority that a party who is not a shareholder, officer or director could be held liable on an alter ego theory. In a decision and order dated July 7, 2011, this Court denied the motion to dismiss. The written decision was not available as of this date.

By the order of Magistrate Cecchi, motions for summary judgment had to be made on or before July 15, 2011.

The undisputed facts in this case demonstrate that Mr. DiMauro was a lender to TVI; his involvement with TVI was part of efforts to protect his substantial loans made to TVI. All of his actions with regard to TVI are consistent with this type of relationship. TVI had two managers, Jeffrey Pressman and Andrew Hritz who were on site and directed the operations of the oil terminal. Mr. Hritz has been employed at the terminal by previous owners and Mr. Pressman was hired by the president and sole shareholder of TVI, Vito DeMaio, when Mr. De Maio purchased the terminal in 1998.

2

It is also undisputed that TVI is a small, closely held corporation. It has a board of directors who, in lieu of meetings, execute a standard type of waiver. TVI maintains a bank account from which it pays its taxes, its vendors and its sole creditor, Mr. DiMauro. Mr. Hritz and Mr. Pressman are on site at TVI to manage its operations on a daily basis.

TVI was not profitable in the early years after Mr. DeMaio purchased it but it became profitable in 2004. It had significant retained earnings, met its payroll obligations, met its tax obligations and paid its vendors. In 2007, there were no judgments against TVI. TVI had an ongoing business operation at the terminal where it stored fuel oil for several customers before the contract with Masefield in 2007.

Plaintiff claims that payments to Mr. DiMauro were a "siphoning of assets"; this is not consistent with the undisputed facts herein. Mr. DiMauro (either personally or through another company with which he was affiliated), made the original loan to Mr. DeMaio which facilitated the purchase of the terminal. He then made a series of loans from 1998 to date which ultimately resulted in TVI's indebtedness to Mr. DiMauro in the sum of about $9 million. When TVI became profitable in 2004, it began to pay Mr. DiMauro back. TVI had no other credit arrangements with a bank or a brokerage house aside from its arrangement with Mr. DiMauro.

The loan repayments to Mr. DiMauro beginning in 2004 predate the contract with plaintiff by several years.  The loans made by Mr. DiMauro are listed in TVI's general ledger.

Plaintiff will undoubtedly attempt to argue that TVI was insolvent at the time the contract was signed since TVI requested and received a loan from plaintiff to repair the south dock. The fact of the loan does not alter TVI's financial status. Since the damage to the south dock was precipitated by a ship delivering product to Masefield, TVI's lender, Mr. DiMauro, concluded and insisted that plaintiff should be responsible for the repair of the south dock.

3

In sum, the undisputed facts show that at the time the contract was signed with plaintiff in 2007, TVI was a functioning oil terminal, profitable since 2004.  Further, since TVI is not insolvent now (and was not insolvent in 2007), the claim sounding in fraudulent transfer is baseless as a matter of law. Plaintiff has no information to the contrary to alter the fact that the New Jersey Department of Transportation concluded that TVI's property was worth about $2.5 million in 2009. Public records demonstrate that there are no outstanding mortgages against this property nor are there any outstanding judgments against TVI.

The motion for summary judgment should be granted in all respects.

## POINT I

## THE ALTER EGO CLAIMS FAIL AS A MATTER OF LAW

### A.  Mr. DiMauro Is Not Synonymous With TVI; TVI Has A Separate Identity From Mr. DiMauro.

This case is not an appropriate one for piercing the corporate veil.   Plaintiff's claims that Mr. DiMauro is an "actual, beneficial and/or equitable owner" of TVI fail as a matter of law since plaintiff will be unable to prove that any actions taken by Mr. DiMauro were in derogation of the corporate form and " designed to execute illegitimate purposes in abuse of the corporate fiction and the immunity it carries." Rose Containerline, Inc. v. Omega Shipping Co., Inc., 2011 WL 1253849, p. 3 (D.N.J. 2011). The books and records of TVI reflect the fact that Mr. DiMauro lent TVI substantial money and assisted a lifelong friend and business associate, Vito DeMaio in his purchase of the terminal in 1998; the books and records of TVI further demonstrate that it was a working company, with customers, employees, managers and assets separate and apart from Mr. DiMauro.  See Statement of Undisputed Facts at paragraphs 12-21.

The money was lent to TVI by either Mr. DiMauro or one of the companies affiliated with him on a demand basis with an interest rate of LIBOR plus 4. Once TVI became profitable in 2004, Mr. DiMauro requested payments on his loans on a periodic basis and TVI complied with these requests. This is all documented in TVI's general ledger and all of this predates the contract with plaintiff in 2007. See Horizon Plastics, Inc. v. Constance, 2004 WL 1234049, p. 4 (S.D.N.Y. 2004) (holding that under New Jersey law, … "the fact that a stockholder may have lent money to a corporate property owner to pay its debts to a subcontractor does not provide a basis for piercing the corporate veil").

TVI had two experienced professional managers, Andrew Hritz and Jeffrey Pressman, onsite and operating the terminal.  Any of Mr. DiMauro's activities with regard to the terminal occurred at points where there were issues which could potentially affect his substantial loans. None of Mr. DiMauro's actions with regard to the terminal point to anything but his interest as a lender and none of Mr. DiMauro's actions precipitated any alleged insolvency by TVI or disrupted its business.

Summary judgment is appropriate where the moving party establishes that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. See Pearson v. Component Technology Corp., 247 F.3d 471 (3rd Cir. 2001).

Courts begin an inquiry concerning "piercing the corporate veil" with the assumption that a corporation is an entity separate and apart from its shareholders and directors.  See Yacker v. Weiner, 109 N.J.Super. 351, 263 A.2d 188 (Ch.Div. 1970), aff'd o.b. 114 N.J.Super. 526, 277 A.2d 417 (App. Div. 1971).  The corporate entity is not lightly disregarded.  See DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976) (holding that "This power to pierce the corporate veil, though, is to be exercised 'reluctantly' and 'cautiously'

and the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim").

In Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (Sup. Ct. N.J. 1982), the New Jersey Supreme Court stated that a "corporation is an entity separate from its stockholders" and that "courts will generally not pierce the corporate veil to impose liability on the entity's principals".

"In addition, piercing the corporate veil is not a mechanism by which legal liability is imposed per se, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form. (citation omitted). Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil. (citation omitted)." Chen v. HD Dimension, Corp., 2010 WL 4721514, p. 4 (D.N.J. 2010).

A party seeking to disregard the corporate entity bears the burden of proof. DeWitt at 683. Courts have reviewed a series of factors where piercing the corporate veil is requested. "In New Jersey, two elements must be shown to pierce the corporate veil. First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." (citation omitted). State Capital Title & Abstract Co. v. Pappas Business Services, LLC, 646 F.Supp.2d 668, 679 (D.N.J.2009).

**B. Plaintiff Is Unable To Prove Any Fraud Or Injustice Against It.**

Primary then among the factors considered in sustaining a claim sounding in piercing the corporate veil is the misuse of the corporate form to specifically perpetuate fraud or injustice. See Verni ex rel. Burstein v. Harry M. Stevens, Inc. 387 N.J. Super. 160, 198, 903 A.2d 475

(App. Div. 2006) (holding that "In the absence of fraud or injustice, courts will generally not pierce the corporate veil to impost liability on the corporate principals").

The requirement that the corporation is manipulated for the benefit of its insiders must result in a fraud or injustice perpetuated against a creditor. See Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc., 884 F.Supp. 162, 166 (D.N.J. 1995) (holding that "As noted above, defendants have simply alleged domination. Because defendants have not included even conclusory allegations as to fraud, injustice or any sort of illegality, defendants' claims could not survive scrutiny under either Rule 9(b) or 8(a)(2)").

In Green v. Mason, 996 F. Supp. 394, 398 (D.N.J. 1998), this Court held that "a finding of some fraudulent intent is the sine qua non to veil piercing" (citations omitted). In re HSR Associates, 162 B.R. 680, 684 (Bankr. D.N.J. 1994), the Bankruptcy Court held that "The mere fact that Fuerstner was the principal of a corporation which acted improperly is not in itself sufficient to hold him personally liable for the corporation's actions").

In the case at bar, the allegations in the Second Amended Complaint are far from even close to the type of allegations necessary to pierce the corporate veil– to wit, the fact that Mr. DiMauro received funds from TVI or that any of the DiMauro defendants received funds from TVI do not demonstrate either the type of fraud or injustice described in Green and In re HSR Associates necessary to pierce the corporate veil.

Further, the requirement of either fraud or illegality has not been met herein where plaintiff's allegations of fraud amount to a breach of contract- i.e. that TVI was not capable of performing its obligation under the March 27, 2007 contract as it lacked the funds to do so. Additionally, there is no proof that any actions taken by either TVI or DiMauro were specifically designed to cause an injustice or fraud against plaintiff. By pleadings, plaintiff has attempted to

turn a garden variety breach of contract claim into fraud. See <u>Rabin v. Mony Life Ins. Co.</u>, 387 Fed.Appx. 36 (2nd Cir. 2010) (holding that the same fact pattern cannot give rise to both a claim sounding in breach of contract and fraud).

To pierce the corporate veil, a party must demonstrate that a corporation is "grossly undercapitalized, shareholders or directors are involved in the day to day activities of the corporation, the corporation fails to observe corporate formalities, the corporation fails to pay dividends, is insolvent, lacks corporate records or is merely a façade." <u>Verni</u> at 200.

The <u>Verni</u> factors are not present herein. TVI operated a functioning oil terminal. It paid its creditors, employees and its taxes. It had individuals who were officers in the company on its board of directors and who executed waivers in lieu of having board of directors meetings. Mr. Pressman and Mr. Hritz, officers and directors of TVI, were on site daily and ran the business. Mr. Pressman prepared a yearly profit and loss statement and arranged for an accountant to prepare tax returns. Mr. Hritz supervised compliance with environmental regulations concerning oil terminals. TVI maintained insurance for its activities and paid its vendors. There were no outstanding judgments against TVI. In short, TVI was an operating, small corporation separate and apart from Mr. DiMauro, who had assisted TVI's owner (Vito DeMaio) in purchasing the terminal in 1998 and had acted as a "bank" for TVI when TVI required an infusion of funds.

"Not every disregard of the corporate formalities or failure to maintain corporate records justifies piercing the corporate veil. That remedy is available only if it is also shown that a corporation's affairs and personnel were manipulated to such an extent that it became nothing more than a sham used to disguise the alter ego's use of its assets for his own benefits in fraud of creditors. In short, the evidence must show that the corporation's owners abused the legal

separation of a corporation from its owners and used the corporation for illegitimate purposes". Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3rd Cir. 1994).

"Similarly, to pierce the corporate veil in the shareholder or officer context, the plaintiff must show that (1) the corporation is so organized and operated as a mere instrumentality, or alter ego, of a shareholder, (2) the shareholder uses the corporation to commit fraud, injustice or circumvent the law, and (3) the shareholder fails to maintain the corporate identity". North American Steel Connection, Inc. v. Watson Metal Products Corp., 2010 WL 3724518, p. 11. (D.N.J 2010).

TVI was an active working corporation, and Plaintiff cannot and has not offered any proof to the contrary- TVI operated a working oil terminal, employed a dozen workers, met its payroll, paid its taxes and made profits. "Domination alone is not sufficient to justify the extraordinary remedy of veil piercing. If it were, 'the members of any small, closely held corporation would be subject to individual liability in any instance when the corporation is alleged to be liable". Id at 12.

In Zubik v. Zubik, 384 F.2d 267 (3rd Cir. 1967), the Third Circuit overruled the district court's finding of alter ego after a trial. Zubik involved a maritime incident in which a series of barges owned by a small corporation broke loose from moorings and caused damages to other vessels. The District Court had held the elderly owner of the defendant corporation responsible on an alter ego theory of liability finding that "The corporate defendant is nothing more than the alter ego of the individual defendant… All of the defendant's finances, activities, operation of the corporation business were intertwined with that of the corporation. The overwhelming weight of the evidence indicates that there is no demarcation between the individual and corporate defendants". Id at 270.

In overruling the District Court, the Third Circuit concluded that "Nothing in the record indicates that an 'operating company such as Zubik Corporation was unique or that it perpetuated fraud on the Pittsburgh river community… The Zubik Corporation not only had carried on a legitimate business for 16 years in dredging and hauling of sand and gravel.. It was a going concern, hiring and firing employees, paying their bills. There is no problem here of a mere corporate shell". Id at 275.

Plaintiff filled the Second Amended Complaint with allegations that Mr. DiMauro is the alter ego of TVI and that Mr. DiMauro has siphoned funds from TVI.  These types of allegations, however, miss the mark herein.  During the course of this litigation, plaintiff has received evidence that TVI is not insolvent and that it possesses sufficient assets to pay any potential judgment obtained by plaintiff against it and evidence that TVI has been a going concern since 1998 with its own employees, its own managers, its own accountant, its own insurance and its own bank accounts.  The appraisal report prepared by New Jersey in connection with the condemnation of a portion of TVI's property demonstrates that TVI retains property worth approximately $2.5 million.  See Statement of Undisputed Facts at paragraph 39.  Since plaintiff is fully cognizant of the fact that TVI still owns part of the property on which the terminal sits, the question of piercing the corporate veil has no place in this litigation at this time especially where plaintiff premises the Second Amended Complaint upon the false allegation that TVI is insolvent and that DiMauro manipulated TVI to insure its insolvency.

Plaintiff bases its allegations that TVI is insolvent upon two facts which are not relevant to the inquiry- that TVI used a loan from plaintiff to repair the south dock and that a creditor seeking a small amount was not paid. Neither fact can change the undisputed fact that the New Jersey Department of Transportation's appraisal concluded that TVI had property worth about

$2.5 million. Plaintiff has not provided this Court with any alternate appraisal and since

discovery had concluded, cannot do so. There is no TVI insolvency; any movement of money to

DiMauro by TVI is irrelevant since that movement did not affect TVI's bottom line at all.

<b><u>POINT II</u></b>

<b><u>THE FRAUDULENT TRANSFER CLAIM FAILS</u></b>

The  alleged claims in the Second Amended Complaint sounding in fraudulent transfer

are based upon N.J.S. 25: 2-25 providing s as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation:
> a.   With actual intent to hinder, delay or defraud any creditor of the debtor;
> b.   Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (1) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

The Second Amended Complaint alleges that TVI intentionally and fraudulently

transferred $1.3 million to DiMauro, Eastern and Clark Dodge when these defendants knew that

there was a potential claim against TVI by plaintiff.

The claim also contends that there was no adequate consideration for the transfer.

Plaintiff further claims that TVI was insolvent at the time the money was transferred to the

DiMauro defendants. Plaintiff bases these allegations of TVI's alleged insolvency upon the fact

that TVI received a loan for about $300,000 from plaintiff in order to restore the south dock.

In order to prevail on this claim, plaintiff will have to prove by a clear and convincing

evidence, that the transfer of $1.3 million to the DiMauro defendants rendered TVI insolvent at a

11

time, that these defendants knew of plaintiff's potential litigation and that this transfer was made with actual intent to defeat, impair and impede plaintiff's claims. Since the undisputed facts here belie the very nature of this claim, it should be dismissed on summary judgment. See In re OFRA Sec. Litigation, 654 F.Supp 1449 (D.N.J. 1987) (holding that fraud must be proven by clear and convincing evidence under New Jersey law).

As the Statement of Undisputed Facts demonstrates, TVI was not insolvent at the time that it repaid $1.3 million to Mr. DiMauro. This money represented partial repayment of loans made by Mr. DiMauro to TVI beginning in 1998. Therefore, the books and records of TVI and the only testimony on this point demonstrate that the payment of the $1.3 million had nothing to do with plaintiff's claim and that the obligation to repay Mr. DiMauro predated plaintiff's contract with TVI. See VFB, LLC v. Campbell Soup Co., 482 F.3d 624 (3rd Cir. 2007) (holding that "the court determined both that the spin was not a fraudulent transfer and that, because VFI had been solvent at the time of the spin, it owed no fiduciary duty to future creditors of VFI.").

In Mitsui O.S.K. Lines v. Continental Shipping Line, Inc., 2007 WL 1959250, p.8 (D.N.J. 2007) this court found that "while the transfer of property back to Gallion occurred after this lawsuit was filed, it appears that Gallion received no considered for it- just as he had received no consideration from the initial transfer to Continental. The benefit Gallion gained was by Continental paying his mortgage in lieu of or part of a salary. Accordingly, plaintiff has failed to establish that the property was transferred with an intent to defraud."

As noted above, a party alleging a transfer with an actual intent to defraud bears a heavy burden of proof. As noted in Telefest v. Vu-TV, Inc., 591 F.Supp. 1368, 1377 (D.N.J. 1984) (decided under an earlier version of the fraudulent transfer statute), "Where a conveyance is supported by an antecedent debt, a grantee of that conveyance may support it when attacked as

fraudulent by merely pointing to the antecedent debt as the consideration, provided the grantee acted in good faith in accepting it").

The fact of the transfer alone is not sufficient as plaintiff here alleges. There must be convincing evidence that the so-called transfer was accomplished with an intent to hinder, impede and impair the rights of known creditors. See In re Hanson, 373 B.R. 522, 527 (Bkrtcy. N.D. Ohio, 2007) (holding that "In a recent case, the court found that if the debtor's debt is reduced by the same amount paid, there is an exchange of reasonably equivalent value and the transfer is not fraudulent…The payment of legitimate creditors, being inapposite to the underlying concept of a fraudulent transfer, strongly negates an intent to defraud."). Aside from the allegations, plaintiff has no proof of an actual intent to defraud.

Plaintiff will not be able to overcome the legal effect of TVI's solvency at the time that TVI repaid the DiMauro defendants for certain outstanding loans. Without any proof of insolvency, plaintiff's claim under the fraudulent transfer statute fails. See Telefest at 1377, holding that "Since insolvency has not been established, the court need not reach the question of fair consideration…").

The fraudulent transfer claims should be dismissed.

## POINT III

## THE CLAIM FOR FRAUDULENT TRANSFER IS INCONSISTENT WITH UNDISPUTED FACTS

On or about October 28, 2010, plaintiff made an application before this Court for the extraordinary relief of a writ of attachment and an injunction.  Plaintiff's stated purpose for this application was to prevent TVI from dissipating its assets prior to the conclusion of this action. In its brief in support of this request, plaintiff stated as follows: "Plaintiff recently discovered that the New Jersey Department of Transportation ("NJDOT") is acquiring the property upon

13

which the TVI terminal facility is situated, through its power of eminent domain.  Therefore,

substantial funds are about to come into possession of TVI as a result of the sale.  In order to

avoid the fraudulent dissipation of the sale proceeds, plaintiff seeks this order of attachment of

TVI's assets up to the present value of plaintiff's claim and a temporary restraining order

preventing TVI from realizing and transferring the proceeds of the imminent sale of the facility

until an attachment of those funds can be effected and/or a post-seizure hearing on this Order To

Show Cause can be scheduled."   See plaintiff's brief in support of application for attachment,

document number 54 at pages 1-2.  Plaintiff further stated: "In light of TVI's history of

fraudulent transfers, as well as its inability to pay its creditors, Masefield believes that upon its

receipt of the settlement proceeds, TVI will immediately transfer the funds to Mr. DiMauro or

one of his entities and/or another third party in an attempt to defraud its creditors, including

Masefield".  Id at 11.

       In opposition to this application, TVI stated as follows: "Plaintiff points to not a single

instance where massive amounts of funds have been 'immediately transferred' whether for good

reason or for ill.  Nor has it shown any prior adjudication of fraud or other evidence of any kind

to indicate such a course of conduct…."  TVI's brief in opposition to application for writ of

attachment, document number 53 at page 12.  "The Komsa Declaration implies that the NJDOT

is purchasing the entire facility. (citations omitted).  This is not so.  It is purchasing only a part of

the facility under its condemnation power".  Id at page 6.

       In a decision and order dated December 3, 2010, this Court denied plaintiff the

extraordinary relief it had sought.  This Court found that "Additionally, plaintiff contends that

after the real estate transfer to the NJDOT, TVI will no longer have any property within the State

of New Jersey.  This, however, does not appear to be the case as the Court is satisfied with

defense counsel's representation that defendant continues to own valuable real property in the State of New Jersey".   Transcript of Decision and Order dated December 3, 2010, document number 73 at page 8.

This Court found that "On October 29, 2010, defendant finalized the sale of the terminal facility for approximately $18 million.  Defendant still owns a three (3) acre parcel in Jersey City that contains, inter alia, storage tanks, and its office building.  During the sale of the property, this three (3) acre parcel was appraised at $3 million." Id. at page 3.

This Court further held that "The plaintiff's bald assertion is that TVI has shown particular expertise in hiding assets, or as plaintiff claimed, making false statements.  The bald assertions are not sufficient to convince this Court that in fact will occur in the context of this case as the litigation goes forward, especially in light of the fact that the defendant has represented to this Court that it possesses sufficient assets apart from the proceeds of the sale to NJDOT, which are in question here, to compensate plaintiff in the event it is successful in obtaining a judgment against the defendant". Id at 11.

The Fifth Cause of Action in the First Amended Complaint seeks the same relief, to wit, an order of attachment and an injunction, which this Court has already denied finding the application to be legally insufficient.  Thus, the Fifth Cause of Action is based upon the same premise already been reviewed and determined by this Court to be lacking.  Specifically, plaintiff bases these claims upon the assertion that TVI is currently insolvent and will be, therefore, unable to satisfy any potential judgment plaintiff may obtain.  As noted above, this Court has determined in reviewing the same facts submitted by plaintiff in support of the application for a writ of attachment and injunction that TVI is not selling all of its assets to NJDOT and will retain

sufficient resources to potentially pay plaintiff in the unlikely event that plaintiff prevails in this action.

The discovery in this case has not changed the basic assumption utilized by this Court in denying the attachment and injunction. All of the testimony herein indicates that TVI was a working company at the time the contract with plaintiff was signed and that it still owns property in New Jersey.

## POINT IV

## CLAIMS BASED UPON LOANS SHOULD BE DISMISSED

The Second Amended Complaint alleges that Mr. DiMauro received funds improperly from TVI. Plaintiff alleges as follows: "Specifically, this document made clear that even after learning of Masefield's claim, TVI continued transferring its assets to Mr. Joseph DiMauro, EEF, and Clark Dodge, without valuable consideration and/or without adequate and fair consideration… The general ledger indicates that from November 2007 until June 30, 2009, TVI transferred at least $1,302,394.20 to Mr. Joseph DiMauro and/or his various shell entities including defendants Eastern Energy Fuels and Clark Dodge…" Second Amended Complaint annexed to Statement of Undisputed Facts at Exhibit D at paragraphs 59 and 60.

As noted above, this Court has already determined as follows: "defendant has provided the Court with proofs that suggest that said transfers were repayments for loans DiMauro allegedly made to TVI…As to plaintiff's contention that TVI received no consideration for its $1.3 million transfer to Mr. DiMauro, as the Court previously stated defendant has provided proofs at this stage of the litigation sufficient to suggest that the alleged $1.3 million in transfers to Mr. DiMauro or his related companies may have been in fact repayments towards loans made by Mr. DiMauro". Transcript of Decision and Order at page 8.

16

In <u>Horizon Plastics, Inc. v. Constance,</u> 2004 WL 1234049, p. 3 (S.D.N.Y. 2004), a case decided under New Jersey's law on fraudulent conveyances, the District Court held that "the fact that a stockholder may have lent money to a corporate property owner to pay its debts to a subcontractor does not provide a basis for piercing the corporate veil."

Here, as in <u>Horizon,</u> the thrust of plaintiff's claims against Mr. DiMauro and the DiMauro defendants rests upon the allegations that these defendants received funds from TVI. As this Court has already noted, such funds were repayments of loans. The books and records of TVI as well as the deposition testimony of Mr. DiMauro and Mr. Pressman substantiate these loans and delineate the purpose for the loans. There is no conflicting evidence– just bald conclusions by plaintiff presented as a substitute for facts which do not exist.

The motion for summary judgment should be granted in all respects.

## **CONCLUSION**

For all of the reasons heretofore stated, the Motion for Summary Judgment should be granted in its entirety.

Respectfully submitted.

Dated: New York, New York
   July 15, 2011

        MEIER FRANZINO & SCHER, LLP

By: Frank J. Franzino, Jr,
   Attorneys for Defendants Joseph DiMauro,
   Eastern Energy Fuels, Inc., and Clark
   Dodge and Company, Inc.
   570 Lexington Avenue, 26th Floor
   New York, NY 10022
   212-759-9770
   And

Winne Banta Hetherington Basralian &
Kahn, P.C.
Court Plaza South – East Wing
21 Main Street, Suite 101
P.O. Box 647
Hackensack, New Jersey 07601-0647
203-487-3800

18